Filed 5/14/24  In re T.G. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re T.G., a Person Coming Under the Juvenile Court Law. | C098900 |
| THE PEOPLE, | (Super. Ct. No. JV138965) |
| Plaintiff and Respondent, | |
| v. | |
| T.G., | |
| Defendant and Appellant. | |

The juvenile court committed T.G. to the Valley Oak Youth Academy (VOYA), a secure youth treatment facility (Welf. & Inst. Code, § 875, subd. (a)),[1] setting the baseline term of confinement at four years and the maximum term of confinement at seven years four months with 1,823 days of custody credit.

---

[1]  Undesignated statutory references are to the Welfare and Institutions Code.

1

T.G. now contends (1) the juvenile court abused its discretion in ordering a VOYA secure youth treatment facility commitment, (2) the juvenile court should have applied the custody credit to the baseline term of confinement, and (3) the disposition minute order must be corrected.

We conclude the juvenile court did not abuse its discretion in committing T.G. to VOYA.  But we will remand the matter for recalculation of the baseline term of confinement, direct the juvenile court to correct the disposition minute order, and otherwise affirm the judgment.

BACKGROUND

In 2017, the People filed a wardship petition alleging that T.G. (then 16 years old) stole a 2012 Nissan Altima and bought or received the same stolen car.  T.G. admitted a misdemeanor violation in exchange for probation.  The juvenile court approved the parties' agreement and placed T.G. on probation for six months.

In 2018, the People filed a wardship petition charging T.G. with murder and asserting a firearm enhancement allegation.  The detention report indicated that T.G. and two adults chased the victim and shot him.  A stolen nine-millimeter Glock was recovered at T.G.'s home and linked to the spent casings recovered near the victim's body.  The People moved under section 707 to have T.G. declared unfit for treatment within the juvenile justice system.

T.G. admitted voluntary manslaughter (Pen. Code, § 192, subd. (a)) with a firearm enhancement (Pen. Code, § 12022, subd. (a)(1)) and agreed to a stipulated commitment to the Division of Juvenile Justice (DJJ).  In exchange, the People agreed not to seek transfer to adult criminal court.  The juvenile court adjudged T.G. a ward of the court and committed him to DJJ with custody credit.

A May 2021 annual DJJ case review recommended T.G.'s continued placement and confirmed his projected board of parole review date of June 2024.  The report stated: "[T.G.] has not made any progress in addressing his primary treatment objectives this

2

year. He continues to resort to anti-social coping skills to resolve peer conflict and get his needs met. [T.G.'s] desire for peer approval is the motivation behind his criminal and addictive behavior. He was transferred to a higher level of treatment due to his risk in the areas of Violence/Aggression, Adaptive Skills, and Attitudes. He continues to remain a significant health and safety risk to the community. The Glen Hall Treatment Team recommends [T.G.] continue facility placement in order for him to develop strengths in his primary treatment objectives."

But in December 2022, the probation department filed a petition to set aside T.G.'s DJJ commitment based on statutory changes brought about by Senate Bill No. 823 (2019-2020 Reg. Sess.) requiring youth previously committed to DJJ to be returned to their county of commitment for a new disposition hearing.

According to a DJJ transfer report, a comparison of T.G.'s original scores on the California Youth Screening Instrument to his most recent assessment showed that he was at higher risk and need, scoring moderately high in both categories, and his overall strength rating had declined from moderate to low. T.G.'s individual change plan noted he had engaged in violent behavior in the past six months and that he believed violence was a justified reaction to small things. The plan stated T.G. would benefit from substance abuse treatment. His case plan recommended continued work on aggression and violence, among other things. T.G. was affiliated with the Del Paso Heights Blood DPH street gang. He graduated from high school in 2019 and worked as a dayroom manager. He failed a college course at DJJ and refused to attend more because he was not interested in the classes offered. T.G.'s case plan said he was "poorly qualified for most employment opportunities" and encouraged him to obtain employment that would assist in his reentry. T.G.'s reentry plan was to complete the reentry group and be discharged to his grandfather.

The probation department recommended a commitment to VOYA. It described the treatment programs available at VOYA, including behavior treatment interventions,

3

cognitive behavior interventions for substance abuse, post-secondary educations opportunities, and vocational programs. Probation subsequently asked that T.G.'s commitment to DJJ be set aside and that T.G. be returned to Sacramento County for a new disposition hearing. The juvenile court dismissed probation's original section 731.1 petition, granted the new petition, and set the matter for a contested disposition hearing.

The probation department filed a second probation report, recommending a 60-day commitment to juvenile hall and assessment by a reentry team. The reported provided an update on T.G.'s behavior at DJJ. T.G.'s rating had been downgraded due to "physical altercations, not following staff directives, and possession of a controlled substance." But he had completed multiple interventions and journals.

At the contested disposition hearing, T.G.'s counsel argued against a secure youth treatment facility commitment, noting T.G.'s positive behavior since he was returned to Sacramento. T.G.'s counsel argued T.G. could be safely treated in the community. The People disagreed, arguing a VOYA commitment was appropriate given T.G.'s offense and his behavior at DJJ, notwithstanding his recent progress.

The juvenile court agreed with the People and committed T.G. to VOYA, stating: "The Court has read and considered both of the reports from probation and the briefings from counsel and considered the arguments and the presentation from the family. [¶] The Court takes judicial notice of all prior findings, orders, and judgments, and proceedings. The Court has considered a number of factors, including the severity of the offense, the role of the offense, and the harm done to the victims, the prior delinquent history, the programming and treatment and education offered in the VOYA program. [¶] And whether the goals of rehabilitation and community safety can be met by assigning the youth to an alternate less restrictive disposition available to the Court, as well as any specific factors related to age, maturity, emotional health, et cetera. [¶] The Court finds that a less restrictive alternative disposition is unsuitable, and the subject is committed to a secured youth treatment facility, VOYA."

The juvenile court set T.G.'s baseline term of confinement (§ 875, subd. (b)) at four years and the maximum term of confinement (§ 875, subd. (c)) at seven years four months with 1,823 days custody credit.

DISCUSSION

I

T.G. contends the juvenile court abused its discretion in ordering a VOYA commitment. We disagree.

A

Until recently, DJJ was "the state's most restrictive placement for its most severe juvenile offenders." (*In re Miguel C.* (2021) 69 Cal.App.5th 899, 902.) DJJ was previously known as the California Youth Authority. (*Id.*, at p. 906, fn. 4.) In 2020, the Legislature enacted juvenile justice realignment by passing Senate Bill No. 823 (2019-2020 Reg. Sess.) (Stats. 2020, ch. 337). Implementing the Legislature's juvenile justice realignment program required the eventual closure of DJJ and the transfer of its responsibilities to California counties. (§ 736.5, subd. (a).) The county-level equivalent of DJJ is a secure track commitment, also known as a secure youth treatment facility. (§§ 875, 875.5.)

Section 875, subdivision (a)(3) authorizes commitment to a secure youth treatment facility if a ward meets certain criteria and "[t]he court has made a finding on the record that a less restrictive, alternative disposition for the ward is unsuitable." The juvenile court must base its determination "on all of the following criteria: [¶] (A) The severity of the offense or offenses for which the ward has been most recently adjudicated, including the ward's role in the offense, the ward's behavior, and harm done to victims[;] [¶] (B) The ward's previous delinquent history, including the adequacy and success of previous attempts by the juvenile court to rehabilitate the ward[;] [¶] (C) Whether the programming, treatment, and education offered and provided in a secure youth treatment facility is appropriate to meet the treatment and security needs of the ward[;] [¶]

5

(D) Whether the goals of rehabilitation and community safety can be met by assigning the ward to an alternative, less restrictive disposition that is available to the court[;] [¶] (E) The ward's age, developmental maturity, mental and emotional health, sexual orientation, gender identity and expression, and any disabilities or special needs affecting the safety or suitability of committing the ward to a term of confinement in a secure youth treatment facility." (§ 875, subd. (a)(3)(A)-(E).)

We review the juvenile court's commitment decision for abuse of discretion, indulging all reasonable inferences in support of the juvenile court's decision. (*In re Angela M.* (2003) 111 Cal.App.4th 1392, 1396.) " 'A trial court abuses its discretion when the factual findings critical to its decision find no support in the evidence.' " (*In re Khalid B.* (2015) 233 Cal.App.4th 1285, 1288.) There is no abuse of discretion where the commitment is supported by substantial evidence. (*In re Angela M.*, at p. 1396.)

B

Substantial evidence supports the juvenile court's commitment decision. T.G.'s voluntary manslaughter offense was extremely serious. (§ 875, subd. (a)(3)(A).) The victim was chased, shot, and died, and a gun tied to the crime was found in T.G.'s home. T.G. agreed to the original DJJ commitment as part of a plea agreement, reducing the charges against him from first degree murder to voluntary manslaughter and eliminating the People's effort to prosecute T.G., who was then 18 years old, in the adult criminal system.

T.G.'s rehabilitation efforts have been mixed. Although there is evidence of some positive steps and recent improvement, there is also evidence of continuing concerns. Substantial evidence supports the juvenile court's determination that VOYA could meet T.G.'s needs. The DJJ transfer report indicated T.G. needed to work on his aggression and violence, his social networks, and his employment skills. T.G. had a high school diploma and worked as a dayroom manager, but he lacked the skills needed for most employment opportunities. Substance abuse treatment was recommended. According

6

to the probation department's February 21, 2023 report, VOYA offered behavior treatment interventions, cognitive behavior interventions for substance abuse, post-secondary educations opportunities, and vocational programs, including opportunities in construction and the culinary arts.

There is also substantial evidence that the goals of rehabilitation and community safety could not be met by assigning T.G. to a less restrictive placement. A 2021 annual case review stated that T.G. continued to remain a significant health and safety risk to the community. The December 2022 DJJ transfer report said T.G.'s scores indicated he was at higher risk and need, scoring moderately high in both categories, and that his overall strength rating had declined from moderate to low. The probation department's May 2023 behavioral update said T.G.'s behavior management grade had been downgraded because of physical altercations, the failure to follow staff directives, and the possession of a controlled substance.

T.G.'s age also supports the juvenile court's commitment decision. (§ 875, subd. (a)(3)(E)). At the time of the commitment decision, T.G. was 22 years old.

Having reviewed the section 875, subdivision (a)(3) factors, the juvenile court did not abuse its discretion.

II

T.G. next contends the juvenile court should have applied his 1,823 days of custody credit to his baseline term of confinement. Specifically, he claims that both his confinement custody credit and precommitment custody credit should reduce the baseline term. The People agree that remand for recalculation of the baseline term of confinement is required in light of statutory changes to the methodology for calculating baseline confinement.

Based on changes in the law, T.G. may now ask to receive credit for all programs completed or substantially completed at DJJ. (See § 875, subd. (b)(2) [amended by Senate Bill No. 134 (2023-2024 reg. sess.) (Stats. 2023, ch. 47, § 30),

7

effective July 10, 2023].)  In addition, the baseline commitment term for voluntary manslaughter has changed from four years (§ 875, subd. (b)(1); Cal. Code Regs., tit. 9, § 30808, subd. (a)(1)) to a range of three to five years.  (§ 875, subd. (b)(1), (h); Cal. Rules of Court, rule 5.806(d) [effective July 1, 2023].)  While retroactivity is not directly addressed by the statutory changes, it appears T.G. is entitled to the benefit of these ameliorative amendments to his nonfinal judgment given that they might result in a reduction to his baseline term of confinement.  (*People v. Frahs* (2020) 9 Cal.5th 618, 628; *In re Estrada* (1965) 63 Cal.2d 740, 748.)

Having reached this conclusion, we do not address the parties' arguments as to whether precommitment credit should be available to reduce the baseline term or should be solely applied to T.G.'s maximum term of confinement.  Such arguments may be asserted on remand.

### III

In addition, T.G. claims the disposition minute order must be corrected.

We do not agree with T.G.'s argument that the minute order must be corrected to reflect the oral pronouncement of the maximum term of confinement.  Although the relevant juvenile court comment was not easy to follow, we interpret it as explaining the maximum confinement time left *after* the application of credit.  The juvenile court did not say T.G.'s maximum confinement time, before the application of credit, was two years four months.  The minute order is correct in stating that the maximum confinement time is seven years four months.  But there is a typographical error on the minute order that we will direct the juvenile court to correct.  In referring to the days of credit, the minute order states "dats" when it should say "days."

### DISPOSITION

The juvenile court's order setting T.G.'s baseline confinement term (§ 875, subd. (b)) is reversed, and the matter is remanded for a redetermination of the baseline confinement term based on applicable law.  The juvenile court is further directed

8

to correct the June 22, 2023 minute order by changing "dats" to "days."  The judgment is otherwise affirmed.

_____/S/_____
MAURO, Acting P. J.

We concur:

_____/S/_____
DUARTE, J.

_____/S/_____
FEINBERG, J.